# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Al Bahar Company | ) ASBCA No. 58416 |
| | ) |
| Under Contract No. W91GEU-08-P-5289 | ) |

APPEARANCE FOR THE APPELLANT:    Mr. Lauy Abbas Ahmed
                                 Owner

APPEARANCES FOR THE GOVERNMENT:  Raymond M. Saunders, Esq.
                                 Army Chief Trial Attorney
                                 MAJ Nicholes D. Dembinski, JA
                                 Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

The government contracted with appellant for the provision of generators, and for maintenance and service of those generators, for a facility in Iraq. Appellant appeals from a contracting officer's (CO's) decision denying its claim for payment for 11 months of claimed generator maintenance. The parties have elected processing of the appeal without a hearing pursuant to Rule 11. Both entitlement and quantum are before us. For the reasons set forth below, we deny the appeal.

## FINDINGS OF FACT

1. On 29 May 2008, the Department of the Army (government) awarded Contract No. W91GEU-08-P-5289 to Al Bahar Company (appellant) for, among other things, the provision of two generators for Joint Security Station [JSS], Khadra, Iraq, as well as for 12 months of maintenance and service to those generators (R4, tab 1 at 1, 29-30).[1] The contract price was $148,700 (R4, tab 1 at 1).

2. On 23 June 2008, the government modified the contract to upgrade the generators and increased the contract amount by $68,225 to $216,925 (R4, tab 3 at 1).

---

[1] Appellant in places refers to itself as "Iraq Reign Company General Contracts," (e.g., R4, tab 8 at 3), or, in its Rule 11 brief, "Iraq Region Company General Contracts." In this record the anglicized company name is spelled different ways (e.g., Al-Bahhar). As the caption shows, we refer to appellant using the name and spelling used in the awarded contract (Al Bahar) (R4, tab 1 at 1).

3. The contract contained the Federal Acquisition Regulation (FAR) 52.212-4, CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (FEB 2007) clause (R4, tab at 4), which provides at ¶ (i), Payment:

> (1) Items accepted. Payment shall be made for items accepted by the Government that have been delivered to the delivery destinations set forth in this contract.

(R4, tab 1 at 5)

4. Appellant installed the upgraded generators in June 2008 (R4, tab 25 at 1, ¶ 5).

5. Appellant also provided generator services in July 2008 (R4, tab 25 at 2, ¶ 6), and in August 2008 (R4, tab 7). On 16 February 2009, the government certified Voucher No. 202553 for payment of $4,450 to appellant for generator maintenance and service from 1-30 August 2008 (R4, tab 7).

6. On 9 July 2012, appellant requested payment of $48,950 for 11 consecutive months of generator services, through 31 July 2009, indicating that it had otherwise been paid (R4, tabs 5, 9 at 1-2).

7. In support of its payment request, appellant on 11 July 2012, submitted to the CO Invoice Nos. 2-12 (R4, tab 22). Each invoice requested payment of $4,450 for one month of service (*id.*), covering the period 30 August 2008 through 31 July 2009 (*id.*). The invoices are purportedly signed for the government by SGT Desmica Calhoun (*id.*).

8. The Invoice No. 8 that appellant originally provided the government is dated 31 March 2008 (R4, tab 22), nearly two months before the contract was awarded (R4, tab 1 at 1). The government brought that discrepancy to appellant's attention on 10 August 2012 and advised that the government would not pay that invoice (R4, tab 11 at 101). On 11 August 2012, appellant responded that the original Invoice No. 8 was "not the correct [o]ne which we have on our files," and offered to provide the "correct one" (R4, tab 11 at 98-99). By 31 August 2012, appellant had provided a second "corrected," Invoice No. 8, dated 31 March 2009 purportedly signed for the government by SGT Desmica Calhoun (R4, tab 11 at 95-97, tab 19 at 204).

9. On 27 August 2012, the Defense Finance and Accounting Service (DFAS), which had been processing appellant's payment request, informed appellant that the government had paid appellant a duplicate payment of $4,450 (R4, tab 12 at 133-34).

10. On 29 August 2012, DFAS informed appellant that 10 invoices would be paid, and that with an offset of the $4,450 duplicate payment, "[appellant] should receive 9 payments in [its] banking account" (R4, tab 12 at 129-31). On the same date, appellant stated to DFAS:

2

> Please take the payment which paid twice we do not have
> any problem about that.... [H]ow many Invoices will
> process for pay? [It's] 10 is that correct?

(R4, tab 12 at 131-32)

11. On 31 August 2012, DFAS informed appellant that there had been a "DO NOT PAY" directive imposed on the contract on 4 October 2008, and that DFAS would wait for approval from the contracting office before making payment (R4, tab 12 at 115-16).

12. On 17 September 2012, in a final decision, the CO denied appellant's payment request, interpreting it as a request for "payment of ten invoices" (R4, tab 14).

13. On 20 September 2012, appellant objected in writing to the denial of its payment request, and requested that the CO review that decision (R4, tab 15). In its written objection, appellant did not state a dollar amount (*id.*). Accompanying the objection, appellant provided what purports to be a payroll document signed by three of appellant's workers no later than 3 August 2009 (*id.*).[2] The document purports to contain the workers' confirmation that they performed contract work (and that appellant paid them for that work) from 1 August 2008 through 31 July 2009 (R4, tab 19 at 195).

14. By 1 October 2012, appellant confirmed that it was requesting payment pursuant to only 10 invoices. On that date, appellant sent the CO an email attaching 10 Material Inspection and Receiving Reports (Forms DD250) corresponding to Invoice Nos. 3-12 (R4, tab 23). In the email, appellant stated, "please [see] the attached files the DD250 for the Invoices which submitted to you before to support our claim" (*id.* at 1). Rule 4, tab 4 contains an additional DD250, corresponding to Invoice No. 2, that is not among the attachments to the 1 October 2012 email (R4, tab 23). Each DD250 is purportedly signed twice by SGT Desmica Calhoun (R4, tabs 4, 23).

15. On 29 October 2012, the CO issued a second final decision rejecting appellant's 20 September 2012 claim (R4, tab 16).

16. On 26 November 2012, appellant timely filed its notice of appeal. Appellant indicated that the appeal challenges the government's denial of payment for 10 months of service purportedly covered by 10 DD250s, which appellant attached to its notice of appeal. Those DD250s correspond to Invoice Nos. 3 through 12.

---

[2] That document also appears at Rule 4, tab 19 at 195, and is attached to appellant's Rule 11 brief.

3

17. On 21 December 2012, appellant indicated that the government had paid Invoice No. 2 twice (R4, tab 19 at 163).

18. Invoice Nos. 2-12 (including the original Invoice No. 8) and their corresponding DD250s are not credible. The invoices and DD250s bear the signature of Desmicia T. Calhoun (R4, tab 26, ¶¶ 1, 5, 7), who from 14 April 2008 through 4 July 2009, served as a Certifier in Commercial Vendor Services responsible for processing contractor payments at Camp Liberty, Iraq, holding the rank of Sergeant (SGT) (*id.*, ¶¶ 2-3). However, SGT Calhoun did not sign the invoices and DD250s (*id.*, ¶¶ 1, 6-7). SGT Calhoun (now Desmicia T. Diggins) credibly denies having signed them, in a sworn statement in which she explains that although the signatures look like hers, she did not affix those signatures to those documents (*id.*, ¶¶ 6-7).[3] While in Iraq, Ms. Diggins was a payment certifying official, not one who received or accepted items from contractors (R4, tab 27, ¶ 5), as she is represented in the invoices and the DD250s. She also notes that in each of their signature blocks, the DD250s misspell her first name, as "D-E-S-M-I-C-A" (R4, tab 26, ¶ 7). By contrast, a 16 February 2009 voucher certifying a $4,450 payment for generator maintenance in August 2008, which Ms. Diggins admits to having signed, spells her first name correctly (R4, tab 7). It is not credible that then-SGT Calhoun would have signed 22 payment-related documents without having taken at least some action to correct the misspelling of her first name.[4] No evidence of comparable weight refutes Ms. Diggins' sworn statement; for example, no representative of appellant has provided a sworn statement explaining the origin of the invoices and DD250s.

19. The "corrected" Invoice No. 8 is also not credible. Although Ms. Diggins does not state that she reviewed the "corrected" Invoice No. 8 (R4, tab 26, ¶ 4), that document also misspells her first name as "DESMICA" (R4, tab 19 at 204). In addition, appellant does not explain how it came to possess two Invoices No. 8, one purportedly created before the contract award and signed by then-SGT Calhoun the month before she was deployed to Iraq, and another created precisely one year after the creation of the first invoice, again signed by then-SGT Calhoun. Moreover, the second Invoice No. 8 lacks the misspelled term "SAINATURE" used on each of the original invoices (including those original invoices ostensibly created after 31 March 2009 (R4, tab 22)), to denote where the signatory should sign the document (*id.*). The adoption of a different format for the "corrected" Invoice No. 8 demonstrates that the "corrected" Invoice No. 8 was not signed on 31 March 2009 by then-SGT Calhoun,

---

[3] In her sworn statement, Ms. Diggins refers to "the DD250s found in the R4 at tab[] 4," and "the invoices in Tab 5" (R4, tab 26, ¶¶ 6-7). Those documents (except for the DD250 corresponding to Invoice No. 2) also appear at Rule 4, tabs 22 and 23.

[4] In addition, the DD250 that corresponds to Invoice No. 7 is dated 29 February 2009 (R4, tab 4 at 46, tab 22), a date that did not occur in that non-leap year.

but was created in 2012, to address the discrepancy that the government had identified between the date of the original Invoice No. 8 and the contract award date.

20. Appellant also relies upon emails purportedly from 1LT Aaron Earls, but those emails are not credible. From April 2008 through February 2009, 1LT Earls was the Troop Executive Officer at JSS Khadra (R4, tab 25, ¶¶ 1-2). The contract identified 1LT Earls as a person to whom appellant would deliver the contract work (R4, tab 1 at Block 15). Attached to the emails, 1LT Earls purportedly sent to appellant all but one of the DD250s that appellant relies upon in this appeal (R4, tab 19). 1LT Earls, however, did not send those emails. In a sworn statement, 1LT Earls credibly denies having sent the emails, explaining that several of the emails post-date his February 2009 departure from Iraq, after which he did not have access to the email account from which the emails were purportedly sent (R4, tab 25, ¶ 11). He also identifies what he credibly describes as discrepancies between the composition of the emails and his own composition style (*id.*). Those discrepancies include the use of a comma instead of a period in the identification of the contract number in the email subject line (that is, "Contract NO," instead of "Contract No.") and the use of the term "Sir" to address a non-commissioned officer who was junior to him (R4, tab 19 at 178).

21. The payroll document (R4, tab 19 at 195) is also not credible. The workers did not sign that document; appellant explained to the government that appellant's accountant affixed the workers' signatures to the payroll document (R4, tab 29 at 1-2).

## DECISION

The Board possesses jurisdiction to entertain the appeal. For the Board to possess jurisdiction to entertain an appeal concerning a monetary claim, the appellant must first have presented to the CO a claim for a sum certain. *See* Contract Disputes Act, 41 U.S.C. § 7103; *Lael Al Sahab & Co.*, ASBCA No. 58346, 13 BCA ¶ 35,394 at 173,662; *Zafer Taahhut Insaat ve Ticaret A.S.*, ASBCA No. 56770, 12-1 BCA ¶ 34,951 at 171,830.

A claim need not contain any particular language or conform to any particular form. *Lael Al Sahab*, 13 BCA ¶ 35,394 at 173,663. In assessing whether a claim has been submitted, it is appropriate to look at the totality of the correspondence and the continuing discussions between the parties. *Id.* Where the amount demanded can be determined from a simple mathematical calculation, a contractor's submission contains a sum certain. *Mohammad Darwish Ghabban Est.*, ASBCA No. 51994, 00-2 BCA ¶ 31,114 at 153,671.

Appellant originally submitted to the CO a request for payment of $48,950, for 11 consecutive months of generator service through 31 July 2009 (finding 6), relying upon 11 invoices (finding 7). The CO denied that request on 17 September 2012, interpreting the request as one for payment pursuant to only 10 invoices (finding 12).

5

On 20 September 2012, appellant objected, requesting in writing that the CO review that denial (finding 13), and on 1 October 2012, appellant sent the CO 10 DD250s corresponding to Invoice Nos. 3-12 (finding 14). Although appellant's written objection does not itself state a sum certain, the totality of the correspondence between the parties establishes, by simple mathematical calculation of the dollar amounts of the 10 DD250s that appellant submitted on 1 October 2012, that on 20 September 2012, appellant had submitted to the CO a claim for $44,500 (10 x $4,450). The CO denied that claim on 29 October 2012 (finding 15). That claim and its denial by the CO provide the Board jurisdiction to entertain the appeal.

Although appellant's Rule 11 brief to the Board references Invoice Nos. 1 through 10, appellant attached to that brief the DD250s corresponding to Invoice No. 2 through Invoice No. 12. Nevertheless, the Board interprets the appeal as challenging the rejection of its claim to payment pursuant to Invoice No. 3 through Invoice No. 12, the invoices corresponding to the 10 DD250s that appellant referenced in, and attached to, its notice of appeal (finding 16).

Moreover, appellant indicates that it was paid twice pursuant to Invoice No. 2 (finding 17). Although there is evidence that appellant received a duplicate payment of $4,450 for one month of service (findings 9, 17), there is no CO final decision demanding that appellant repay that amount; consequently, we do not address any further any issue of overpayment to appellant. *See Lockheed Martin Services, Inc.*, ASBCA No. 58028, 13 BCA ¶ 35,244 at 173,025 (where there was no CO decision demanding return of money paid, we lack jurisdiction to consider it). Accordingly, we address only whether appellant is entitled to payment pursuant to Invoice Nos. 3-12, for the period 30 September 2008 through 31 July 2009.

Appellant must prove its claim by a preponderance of the evidence. *Dick Pacific/GHEMM JV*, ASBCA Nos. 54743, 55255, 09-2 BCA ¶ 34,178 at 168,965. However, appellant does not meet this burden, so it does not prove entitlement to the payment it seeks. Appellant seeks payment pursuant to Invoice Nos. 3-12, and corresponding DD250s, but those invoices and DD250s are not credible because they purport to bear the signature of a person who did not sign them, without any credible explanation (findings 18, 19). Because those invoices and DD250s are not credible, there is insufficient evidence in the record that appellant performed, or the government accepted, the work for which appellant seeks payment.

The emails purportedly sent to appellant from 1LT Earls, attaching the DD250s, do not prove appellant's entitlement to payment. 1LT Earls did not send those emails (finding 20). Even if he had, their attachments—the DD250s—are not credible (finding 18).

The payroll document, purportedly containing the signed statements of three of appellant's workers who claim to have performed contract work from 1 August 2008

6

through 31 July 2009, is not credible (finding 21). Moreover, the contract provides for payment "for items accepted by the Government" (finding 3). The invoices, the DD250s, and the "1LT Earls" emails are not credible (findings 18-20); therefore, there is no credible evidence that the government accepted any contract work after 30 August 2008 (finding 5). Consequently, appellant has not proven that it is entitled to any payment for 30 September 2008 to 31 July 2009, the period covered by Invoice Nos. 3-12.

Appellant also relies upon a 29 August 2012 email from DFAS stating that 10 of the invoices would be paid (finding 10). However, that statement was not the final step in the government's processing of appellant's payment request, and does not prove entitlement to payment. Two days later, DFAS informed appellant of an October 2008 "DO NOT PAY" directive, and that DFAS would wait for approval from the contracting office before making any payments (finding 11). Seventeen days later, on 17 September 2012, the CO denied the payment request (finding 12). The government reviewed the request again, on 29 October 2012, and denied it a second time (finding 15). That 29 October 2012 denial—not the 29 August 2012 DFAS email—was the government's final word on appellant's payment request.[5]

For these reasons, the Board denies the appeal.

Dated: 4 August 2014

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

[5] It cannot be seriously argued that DFAS had the authority to receive appellant's claim in place of the CO. *Linc Government Services, LLC*, ASBCA No. 58561 *et al.*, 14-1 BCA ¶ 35,473 at 173,933.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58416, Appeal of Al Bahar Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals
